# No. 23-1638

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

BARRY CHARLES PORTNOY,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

## ON APPEAL FROM THE DECISION OF
## THE UNITED STATES TAX COURT

## BRIEF FOR THE APPELLEE

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

JENNIFER M. RUBIN                    (202) 307-0524
CARL D. WASSERMAN                 (202) 307-6587
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

15256041.1

# TABLE OF CONTENTS

**Page**

Table of contents......................................................................i
Table of authorities ...............................................................ii
Statement of subject matter and appellate jurisdiction ..........1
Statement of the issues ...........................................................3

I.   Whether the Tax Court correctly granted summary judgment
     to the Commissioner, sustaining the notice of intent to levy
     and federal tax liens against the taxpayer. ...................................3

II.  Whether the Tax Court had jurisdiction to hear taxpayer's
     estoppel claims arising from his bankruptcy. ..................................3

Statement of related cases and proceedings ...........................................3
Statement of the case ...........................................................................3

     A.   Legal Framework of CDP proceedings...................................3

     B.   Statement of Facts .................................................................6

          1.   Administrative Proceedings .........................................6

          2.   Taxpayer's Intervening Bankruptcy ...........................10

Summary of argument ........................................................................18
Argument:

I.   The Tax Court correctly granted summary judgment to the
     Commissioner, sustaining the liens and levy against the
     taxpayer ........................................................................................20

          Statement of the standard or scope of review.......................20

     A.   The Tax Court correctly determined the settlement
          officer did not abuse his discretion in sustaining the lien
          and levy.................................................................................22

**Page**

1. The settlement officer did not abuse his discretion in rejecting a collection alternative when taxpayer failed to provide necessary financial information ....... 24

2. The Tax Court did not err in upholding the 2013 notice of determination despite later tax payments allegedly made to the IRS in bankruptcy. ................... 28

B. The Tax Court did not err in entering summary judgment absent taxpayer's response ................................. 30

II. This Court is without jurisdiction to hear taxpayer's bankruptcy issues................................................................. 35

Conclusion........................................................................................ 38
Certificate of bar membership ............................................... 40
Certificate of compliance ........................................................ 41

15256041.1

-iii-

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bagot v. Ashcroft*,
  398 F.3d 252 (3d Cir. 2005) ...................................................... 37

*Basic Bible Church of Am. v. Commissioner*,
  86 T.C. 110 (1986) .................................................................... 35

*Brown v. Commissioner*,
  58 F.4th 1064 (9th Cir. 2023) ................................................... 28

*Byers v. Commissioner*,
  740 F.3d 668 (D.C. Cir. 2014) ..................................................... 4

*Commissioner v. McCoy*,
  484 U.S. 3 ................................................................................. 38

*Dalton v. Commissioner*,
  682 F.3d 149 (1st Cir. 2012) .............................................. 19, 28

*In re DePaolo*,
  45 F.3d 373 (10th Cir. 1995) .................................................40-41

*Duquesne Light Holdings, Inc. & Subs. v. Commissioner*,
  861 F.3d 396 (3d Cir. 2017) ...................................................... 19

*Est. of Duncan v. Commissioner*,
  890 F.3d 192 (5th Cir. 2018) ..................................................... 38

*Est. of Lee v. Commissioner*,
  No. 21-2921, 2022 WL 3594523 (3d Cir. Aug. 23, 2022) ...... 19, 28

*Greene-Thapedi v. Commissioner*,
  126 T.C. 1 (2006) ...................................................................... 28

*Gregory v. Commissioner*,
  839 F. App'x 745 (3d Cir. 2020) ............................................33-34

*Hartmann v. Commissioner*,
  785 F. App'x 906 (3d Cir. 2019) ........................................... 21, 23

*Jeffers v. Commissioner*,
  992 F.3d 649 (7th Cir. 2021) ..................................................... 38

*Kanofsky v. Commissioner*,
  618 F. App'x 48 (3d Cir. 2015) ...........................................4-5, 19

*Kindred v. Commissioner*,
  454 F.3d 688 (7th Cir. 2006) ..................................................... 24

*Kuretski v. Commissioner*, T.C. Memo. 2012-262,
  2012 WL 3964770, *aff'd*, 755 F.3d 929 (D.C. Cir. 2014) ............ 26

**Cases (cont'd):** **Page(s)**

*Leyse v. Bank of Am. Nat. Ass'n,*
    804 F.3d 316 (3d Cir. 2015) ........................................................ 36

*Living Care Alternatives of Utica, Inc. v. United States,*
    411 F.3d 621 (6th Cir. 2005) ................................................. 4, 23

*Margolis-Sellers v. Commissioner,*
    T.C. Memo. 2019-165, 2019 WL 6904110 ................................. 24

*McLane v. Commissioner,* 24 F.4th 316 (4th Cir.),
    *cert. denied,* 143 S. Ct. 408 (2022) .......................................... 28

*Miller v. United States,*
    363 F.3d 999 (9th Cir. 2004) ...................................................... 41

*In re Minor,*
    2022 WL 1135391 (9th Cir. 2022) .............................................. 41

*Moretti v. Commissioner,*
    77 F.3d 637, 642 (2d Cir. 1996)

*Murphy v. Commissioner,*
    469 F.3d 27 (1st Cir. 2006) .................................................. 19, 23

*Off. of Pers. Mgmt. v. Richmond,*
    496 U.S. 414 (1990) .................................................................... 40

*Olsen v. United States,*
    414 F.3d 144 (1st Cir. 2005) ................................................ 19, 23

*Orum v. Commissioner,*
    412 F.3d 819 (7th Cir. 2005) ............................................... 19, 23

*Our Country Home Enters., Inc. v. Commissioner,*
    855 F.3d 773 (7th Cir. 2017) ...................................................... 38

*Matter of Ribs-R-Us, Inc.,*
    828 F.2d 199 (3d Cir. 1987) ....................................................... 39

*Schwartz v. Commissioner,*
    348 F. App'x 806 (3d Cir. 2009) .......................................... 20, 29

*Slodov v. United States,*
    436 U.S. 238 (1978) .................................................................. 6-7

*Smith v. Commissioner,*
    926 F.2d 1470 (6th Cir. 1991) ............................................... 34-35

*Smith v. Commissioner,* T.C. Memo. 1989-171, *aff'd,*
    926 F.2d 1470 (6th Cir. 1991) ............................................... 34-35

*Tuka v. Commissioner,*
    348 F. App'x 819 (3d Cir. 2009) ................................................ 38

15256041.1

-v-

**Cases (cont'd):** **Page(s)**

*United States v. Sotelo,*
    436 U.S. 268 (1978)..............................................................39

*Wease v. Ocwen Loan Servicing, LLC,*
    915 F.3d 987 (5th Cir. 2019) ......................................29

*Willson v. Commissioner,*
    805 F.3d 316 (D.C. Cir. 2015)..................................28

*Wright v. Commissioner,*
    T.C. Memo. 2012-24, 2012 WL 204181 .......................................24

**Statutes:**

11 U.S.C.:
    § 362(c)(2) ...................................................................36
    § 507(a)(3) ....................................................................39
    § 507(a)(8) ....................................................................39
    § 523(a)(1)...............................................................39-40

Internal Revenue Code (26 U.S.C.):
    § 6201(a) .......................................................................4
    § 6303 ..........................................................................4
    § 6320 ..........................................................................4
    § 6321 ..........................................................................4
    § 6330 ...............................................................4, 6, 20
    § 6330(c) .....................................................................20
    § 6330(c)(1) ..................................................................5
    § 6330(c)(2) ..................................................................5
    § 6330(c)(3) ..................................................................5
    § 6330(c)(4) ..................................................................5
    § 6330(d)(1)..............................................................2, 6
    § 6331(a) .......................................................................4
    § 6331(d)(1)-(2) ............................................................4
    § 6343(e) .....................................................................21
    § 6672 ...................................................1, 6-7, 39-40
    § 7482(a)(1)...................................................................2
    § 7483 ..........................................................................2
    § 7501 ..........................................................................6

**Statutes (cont'd):**                                                    **Page(s)**

28 U.S.C.:
§ 2111 ................................................................................ 36

**Regulations and Regulatory Materials:**

Treasury Regulations (26 C.F.R.):
§ 301.6320-1(d)(2) ......................................................... 21
§ 301.6330-1(e)(1) ........................................................... 23
§ 301.6330-1(e)(3), Q&A-E8(i) ...................................... 6
§ 301.7122–1(c)(1) .......................................................... 27

Internal Revenue Manual:
5.16.1.1.1(1)-(2) ........................................................ 21-22

**Miscellaneous:**

Federal Rules of Appelate Procedure:
10(a) ................................................................................. 2
13(a)(1) ............................................................................ 2

Federal Rule of Civil Procedure:
56 ................................................................................... 18

Tax Court Rule:
21(b)(4) ........................................................ 13-14, 31-32, 34
121 ................................................................................ 18
121(d) ..................................................................... 11, 30
142(a)(1) .......................................................................... 6

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### No. 23-1638

### BARRY CHARLES PORTNOY,

#### Petitioner-Appellant

### v.

### COMMISSIONER OF INTERNAL REVENUE,

#### Respondent-Appellee

---

## ON APPEAL FROM THE DECISION OF THE UNITED STATES TAX COURT

---

## BRIEF FOR THE APPELLEE

---

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The Internal Revenue Service (IRS) assessed trust fund recovery penalties against Barry Charles Portnoy ("taxpayer") pursuant to I.R.C. § 6672 (26 U.S.C.) for the last three quarters of tax year 2009 and all four quarter of tax year 2010.[1]  (AA 09; AA 57-88.)  The IRS issued

---

[1] References to the Internal Revenue Code (I.R.C.) are found at 26 U.S.C. *et seq.*

-2-

Taxpayer a Final Notice of Intent to Levy (AA 107-08) on October 11,
2012, and Notice of Federal Tax Lien on October 23, 2012.  (AA 109-
14.)[2]  On October 30, 2012, taxpayer timely requested a Collection Due
Process (CDP) hearing as to both the levy and lien notices.  (AA 117-18.)
On May 30, 2013, the IRS Office of Appeals issued taxpayer a Notice of
Determination sustaining both the liens and proposed levy.  (AA 96-
100.)  On June 17, 2013, taxpayer timely petitioned the Tax Court,
challenging that determination.  (AA 029-30.)  The Tax Court had
jurisdiction over the petition pursuant to I.R.C. § 6330(d)(1)..

     The Tax Court (Judge Buch) granted summary judgment to the
Commissioner of Internal Revenue and entered a Decision in his favor
on January 3, 2023, resolving all claims.  (AA 009-013.)  On March 30,
2023, within 90 days after entry of the decision, taxpayer filed a timely
notice of appeal.  I.R.C. § 7483; Fed. R. App. P. 13(a)(1).  This Court has
jurisdiction over the appeal from the Tax Court's decision under I.R.C.
§ 7482(a)(1).  As we explain below in Part II of the argument, the Tax

---

[2] "AA" refers to appellant's appendix.  "Br." refers to appellant's
brief.  "SA" references are to the Commissioner's supplemental
appendix, filed simultaneously with this brief.  Most of volume III of the
appellant's appendix was not presented to the Tax Court and is not part
of the record on appeal under Fed. R. App. P. 10(a).  (AA 228-581.)

Court did not have jurisdiction to consider issues arising from

taxpayer's bankruptcy. As such, this Court does not have jurisdiction to

hear the bankruptcy-related issues petitioner now seeks to raise on

appeal.

## STATEMENT OF THE ISSUES

1.      Whether the Tax Court correctly granted summary

judgment to the Commissioner, sustaining the notice of intent to levy

and federal tax liens against the taxpayer.

2.      Whether taxpayer's estoppel claims arising from his

bankruptcy are not properly before this Court or were otherwise waived

and, assuming *arguendo* that they are properly before this Court,

whether they lack merit.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Counsel for appellee respectfully state that they are not aware of

any related cases or proceedings.

## STATEMENT OF THE CASE

### A.    Legal Framework of CDP proceedings

When a taxpayer neglects or refuses to pay an IRS assessment of

federal tax after notice and demand, a lien arises in favor of the United

States upon all of the taxpayer's "property and rights to property."

-4-

I.R.C. § 6321.  *See also* I.R.C. §§ 6201(a), 6303, 6321.  The IRS may

administratively collect the tax by levy under I.R.C. § 6331(a), after

first giving the taxpayer 30 days' notice of intent to do so.  *See* I.R.C.

§ 6331(d)(1)-(2).

In order to provide taxpayers facing administrative collection

action with certain procedural protections, Congress enacted I.R.C.

§§ 6320 and 6330.  *See generally Byers v. Commissioner*, 740 F.3d 668,

671 (D.C. Cir. 2014); *Living Care Alternatives of Utica, Inc. v. United

States*, 411 F.3d 621, 624 (6th Cir. 2005).  These provisions provide

taxpayers the right to a CDP hearing with the IRS Office of Appeals[3]

after an IRS notice of federal tax lien is filed upon their property (I.R.C.

§ 6320) or in most cases before a levy is made on their property (I.R.C.

§ 6330).  "A CDP hearing permits a taxpayer to challenge the

appropriateness of a pending tax lien or levy and/or propose an

alternative method of collection." *Kanofsky v. Commissioner*, 618 F.

App'x 48, 51 (3d Cir. 2015).  "In rendering its determination, the IRS

Office of Appeals must verify the legality of the proposed lien and,

---

[3] The IRS Office of Appeals was renamed the IRS Independent
Office of Appeals in 2019, after the notice of determination was issued
in this case.  (AA 009 n.2; *see also* AA 031-34.)

taking into consideration issues raised by the taxpayer, decide whether the lien 'balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.'" *Id.* (quoting I.R.C. § 6330(c)(3)). As part of the CDP proceeding, the Appeals officer shall "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." I.R.C. § 6330(c)(1). The taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy." I.R.C. § 6330(c)(2)(A). This includes "offers of collection alternatives," such as "an installment agreement, or an offer-in-compromise." I.R.C. § 6330(c)(2)(A)(iii). A taxpayer may contest the "existence or amount of the underlying tax liability for any tax period" but only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." *Kanofsky*, 618 F. App'x at 50; I.R.C. § 6330(c)(2)(B)); *see also* I.R.C. § 6330(c)(4)(A) (precluding a taxpayer from asserting at a CDP hearing an issue raised and considered "in any other previous administrative or judicial proceeding" in which the taxpayer meaningfully participated).

Following the CDP hearing, the Office of Appeals must send the

taxpayer a notice of determination setting forth its findings and

conclusions as to the issues appropriately raised by the taxpayer.

Treas. Reg. § 301.6330-1(e)(3), Q&A-E8(i).  The taxpayer may seek

judicial review of an adverse determination in the Tax Court.  I.R.C.

§ 6330(d)(1).  In a Tax Court challenge to a notice of determination

issued after a CDP hearing, the taxpayer bears the burden of

establishing that the Office of Appeals failed to comply with I.R.C.

§ 6330 and abused its discretion in sustaining the collection

action.  *See* Tax Ct. R. 142(a)(1).

## B.    Factual background

### 1.    Taxpayer's personal liability for unpaid trust fund taxes

Taxes withheld from employees' wages constitute a special fund

held in trust for the benefit of the United States.  I.R.C. § 7501; *Slodov

v. United States*, 436 U.S. 238, 242-43 (1978).  Under I.R.C. § 6672, a

penalty in the amount of the unpaid trust fund taxes may be imposed

on so-called "responsible persons," *i.e.*, individuals who, while not the

"employer," were nevertheless responsible for collecting and paying over

the trust fund taxes and willfully failed to do so. *See Slodov*, 436 U.S. at 245 n.7.

Taxpayer, an owner of Demrex Industrial Services, failed to withhold and pay over to the United States social security taxes and other amounts on behalf of his employees. (Br. at 9.) The IRS therefore held taxpayer personally liable for those amounts—commonly referred to as "trust fund recovery penalties"—as a responsible person pursuant to I.R.C. § 6672. (Br. at 9-10.) The IRS assessed trust fund recovery penalties against the taxpayer for the last three quarters of 2009 and all four quarters of 2010. (AA 57-88.) Before the penalties were assessed, taxpayer challenged them with the IRS Office of Appeals, but Appeals sustained the tax liabilities. (AA 009, AA 100, AA 103.)

## 2.    Levy and lien notices and CDP proceedings

Petitioner did not pay the assessments, and the IRS subsequently sent taxpayer a Notice of Intent to Levy for the unpaid taxes and interest. The assessments totaled $1,244,685.69. (AA 107-08.) The IRS also issued taxpayer a Notice of Federal Tax Lien Filing for similar amounts. (AA 109-14.) Taxpayer acknowledged receipt of the notices, and on October 30, 2012, taxpayer requested a CDP hearing as to both

the levy and lien notices. (AA 117-18.)  Taxpayer's stated reason for

requesting a hearing was "doubt to liability," and he raised no

collectability questions. (AA 117.)

On December 7, 2012, the IRS Office of Appeals settlement officer

responsible for conducting the CDP hearing, Stephen McCarrick, sent

taxpayer a letter scheduling a conference for January 9, 2013

(mistakenly typed 2012).  (AA 121-23.)  The letter noted taxpayer could

not challenge liability at the CDP proceeding because he "previously

had an opportunity to dispute this same liability with Appeals," but he

could still discuss collection alternatives.  (AA 122.)  It instructed

taxpayer to file all federal tax returns, provide a completed Collection

Information Statement (Form 433-A) regarding his financial condition,

and submit four months of bank statements.  (AA 123.)  The letter

warned, in bold letters, that collection alternatives could not be

considered "without this information."  (AA 122.)  Although the

information was due by December 21, 2012, McCarrick informed

taxpayer on January 4, 2013, that he had not yet received the

information.  (AA 094.)  The taxpayer asked to reschedule the CDP

conference to an in-person meeting, and McCarrick received the Form

433-A and partial copies from three bank statements from taxpayer on January 14, 2013. (*Id.*)

The CDP conference was held on January 24, 2013. (*Id.*) McCarrick reiterated that, because taxpayer had previously contested liability in an administrative proceeding, taxpayer could not challenge it again at the CDP hearing. (AA 010.) Although taxpayer sought to make an offer-in-compromise of his tax assessments, taxpayer was told he would not be a good candidate for such relief due to his "equity in assets." (AA 100.) Taxpayer offered no other collection options, and McCarrick sustained the lien. (AA 100, AA 010, AA 104.)

Regarding the levy, McCarrick advised that he would consider reporting the case as "currently not collectible" pending receipt of additional verification of taxpayer's inability to pay. (AA 095, AA 010, AA 106.) He requested that taxpayer provide individual retirement account and money market statements by February 8, 2013. (AA 095, AA 010.) Although taxpayer claims that he sent the materials, McCarrick did not receive the additional information as of May 20, 2013, nor did he have any further contact from the taxpayer. (AA 095,

-10-

AA 099, AA 010.)  The officer therefore sustained the collection and

issued a Notice of Determination on May 30, 2013.  (AA 096-98.)

### 3.    Initial Tax Court proceedings

Taxpayer petitioned the Tax Court on June 17, 2013, challenging

the determination.  (AA 029-034.)  His petition asserted that he sent the

requested financial information but that it may not have arrived.  (AA

029.)  Taxpayer alleged that, if the IRS had notified him the material

had not been received, taxpayer would have had an opportunity to

resend it and "a determination of non-collection was likely."  (AA 030.)

The Tax Court set the case for trial in October of 2014. (AA 029, AA

036, AA 023, docket entry no. 6.)

### 4.    Taxpayer's intervening bankruptcy and stay of the Tax Court proceedings

Taxpayer filed a petition for Chapter 7 bankruptcy on July 30,

2014.  (AA 133-35.)  Taxpayer did not immediately notify the Tax Court

of the bankruptcy, and the Commissioner filed a motion for summary

judgment on August 15, 2014.  (AA 048-56; AA 023.)  In his motion, the

Commissioner noted that taxpayer objected to the granting of the

motion, and the Tax Court ordered taxpayer to respond by September

22, 2014.  (AA 056, SA1-3; AA 023.)  In that order, the court explicitly

warned taxpayer that it could grant summary judgment against him pursuant to Tax Court Rule 121(d) if he failed to respond. (*See* SA1-3.)

Subsequently, counsel for the Commissioner learned of taxpayer's bankruptcy petition and notified the Tax Court, which then stayed all proceedings on September 3, 2014.[4] (AA 125-27; AA 023-24, docket entry nos. 10-12.) The court ordered "the parties" to file a "joint report" by the following March. (AA 014-015.)

### 5.    Taxpayer's elusive whereabouts during the Tax Court proceedings

On February 25, 2015, taxpayer and counsel for the Commissioner submitted the joint status report notifying the Tax Court that the bankruptcy was ongoing. The taxpayer signed the status report on his own behalf at an address listed at 1300 Industrial Blvd. #5, Southampton, PA—the address he listed in his Tax Court petition: (SA5, AA 029):

---

[4] The Commissioner notified the Tax Court of the bankruptcy proceedings on August 27, 2014 (AA 126), and taxpayer filed his own notice the following day. The Tax Court appears to have learned of the bankruptcy from the Commissioner and not taxpayer, noting "respondent [the Commissioner] filed a Notice of Proceeding in bankruptcy….") (AA 014.)

BARRY CHARLES PORTNOY
Petitioner
1300 Industrial Blvd. #5
Southampton, PA 18966
Telephone: 215-852-7283

By: _____
JAYNE M. WESSELS
Attorney
(Small Business/Self-Employed)
Tax Court Bar No. WJ0371
701 Market Street
Suite 2200
Philadelphia, PA 19106
Telephone: 267-941-7143

That was *not* the address he listed in his pending bankruptcy
petition:



| BI (Official Form 1)(04/13) | Document    Page 1 of 3 | |
|---|---|---|
| **United States Bankruptcy Court**<br>**Eastern District of Pennsylvania** | | **Voluntary Petition** |
| Name of Debtor (if individual, enter Last, First, Middle):<br>Portnoy, Barry | Name of Joint Debtor (Spouse) (Last, First, Middle): | |
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): | |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): | |
| Street Address of Debtor (No. and Street, City, and State):<br>101 Edwards Drive<br>Richboro, PA                    ZIP Code<br>18966 | Street Address of Joint Debtor (No. and Street, City, and State):                    ZIP Code | |
| County of Residence or of the Principal Place of Business:<br>Bucks | County of Residence or of the Principal Place of Business: | |

(AA 133.) The court ordered "the parties" to file "further written
reports" on or before September 2, 2015.[5] (SA6.) Counsel for the
Commissioner reached out to taxpayer to file the next written report

---

[5] Contrary to taxpayer's assertion (Br. at 30), the Tax Court did
not order the IRS to submit a "joint report."

but was unable to reach him.  The Commissioner therefore filed a
"Respondent's Status Report" on August 25, 2015, reporting that
taxpayer's voicemail was full.  (SA7-9.)  Taxpayer filed nothing.  On
September 6, 2016, the court again ordered "the parties" "to file further
written reports" and served that order on taxpayer at the Industrial
Boulevard address.  (AA 024-25.)  The court's mail was returned to the
court as undeliverable on September 12, 2016.  (AA 106.)

    The court issued an order on September 20, 2016, updating the
taxpayer's address to 101 Edwards Drive, Southampton, PA 18966.  (AA
024-25; AA 017.)  That address now matched his ongoing bankruptcy
petition—where taxpayer was represented by his current counsel in this
appeal.  (AA 148.)  In that order, the Tax Court warned taxpayer that
Tax Court Rule 21(b)(4) "requires that the Court be promptly notified,
by notice of change of address filed with the Court, of the change of
petitioner's mailing address."  (AA 017.)  The court again ordered "the
parties" to file "further reports" regarding the status of the bankruptcy,
and the Commissioner continued to file status reports, approximately
every six months, through March 30, 2020, with service on the 101
Edwards Drive address as the court ordered.  (SA11-15; AA 025-026,

-14-

docket entries nos. 23, 25, 27, 29, 31, 33, 35, 37 reflecting respondent's

status reports.)[6] Taxpayer filed nothing.

On April 7, 2020, the court ordered the parties to file "further

reports," this time specifically encouraging taxpayer to register for

electronic access to case, and provided a telephone number and email

address for information to obtain that access. (SA16.) This order was

again returned to the court by the Postal Service, with a new

forwarding address. (SA17.) The Tax Court ordered taxpayer's address

changed to 237 S. 18th Street, OFC, Philadelphia, PA 19103-6117 (the

address on the postal forwarding label) and again warned taxpayer that

Tax Court Rule 21(b)(4) "requires that the Court be promptly notified,

by notice of change of address filed with the Court, of the change of

petitioner's mailing address." (AA 019.)

The Commissioner's status reports continued to reflect the

ongoing bankruptcy, attaching copies of taxpayer's bankruptcy docket

sheets. (SA18-21.) The bankruptcy docket sheets continued to show

---

[6] One subsequent court order, filed December 27, 2020, ordered
that "the parties shall file further reports (preferably a joint report),"
acknowledging only that at that time, a joint report was preferred but
not required. (AA 020.)

-15-

taxpayer at the 101 Edwards Drive address, but nothing mailed to the Tax Court-ordered service address on 18th Street in Philadelphia was returned to sender. (SA21.) On May 23, 2022, the Commissioner advised the Tax Court that taxpayer's bankruptcy had closed on April 6, 2021, and that there were no remaining adverse bankruptcy proceedings. (AA 138-41.) The Commissioner had no objection to providing taxpayer with additional time to file his response to the pending summary judgment motion. (Br. at 17, AA 140-41.) Taxpayer was served at his 18th Street address per the court's order. That address remains taxpayer's address of record with the Tax Court. (AA 022.)[7]

The Tax Court issued an order on May 25, 2022, lifting the stay and giving taxpayer until June 22, 2022, to file a response to the Commissioner's motion for summary judgment. (AA 021.) Taxpayer failed to respond to the summary judgment motion, and after several months with no response, Chief Judge Kerrigan ordered the case transferred to Judge Buch for disposition. (AA 028, docket entry no. 49.)

---

[7] This citation is from the docket sheet taxpayer filed with his brief on December 1, 2023. (AA 022.) Taxpayer's address remains unchanged on the Tax Court docket sheet as of the day of this filing.

### 6.    Tax Court order granting summary judgment to the Commissioner

On January 3, 2023, the Tax Court granted summary judgment to the Commissioner.  (AA 009-013.)  Although the motion was unopposed and the facts therefore undisputed, the court applied the traditional summary judgment standard and drew all reasonable inferences in taxpayer's favor.  (AA 012.)  Because liability was not at issue in the CDP hearing, the Tax Court reviewed the Commissioner's collection determination for abuse of discretion.  (*Id.*)  The Tax Court concluded that the Commissioner did not abuse its discretion in sustaining the lien and levy.  (*Id.*)

## SUMMARY OF ARGUMENT

The IRS assessed trust fund recovery penalties against taxpayer for his willful failure to ensure that trust fund taxes were withheld and paid over to the United States.  Before those assessments, taxpayer took advantage of the opportunity to challenge the proposed penalties in the IRS Office of Appeals.  After taxpayer failed to pay the penalties, the IRS sought to collect using liens and a levy.  Taxpayer requested and received a CDP hearing to challenge collection by lien and levy, but failed to provide information required to consider alternatives to

collection, leading to the Office of Appeals sustaining the liens and

proposed levy.  Taxpayer challenged the Office of Appeals'

determination in Tax Court—but disappeared during the course of a

lengthy intervening bankruptcy.  After the bankruptcy, the Tax Court

properly granted summary judgment to the Commissioner.

1.    The Tax Court correctly granted summary judgment to the

Commissioner, sustaining the notice of determination upholding

taxpayer's liens and levy.  Drawing all favorable inferences in

taxpayer's favor, the court properly determined that the Appeals officer

complied with all CDP statutory requirements, and did not abuse his

discretion in rejecting a collection alternative because taxpayer failed to

provide necessary financial information.

The Tax Court properly reviewed the Commissioner's summary

judgment motion as unopposed because taxpayer did not file an

opposition brief.  The Tax Court explicitly warned taxpayer of the

consequences of failing to respond to the Commissioner's summary

judgment motion, but taxpayer still failed to respond.  Although

taxpayer claims that he did not receive the "final" notice from the court

ordering him to respond to the government's summary judgment

motion, taxpayer repeatedly failed to obey the court's direct orders to inform the court of his whereabouts, as well as the Tax Court's rules regarding keeping a current address.

2.    On appeal, taxpayer seeks to argue bankruptcy issues that were never raised in the Tax Court and thus were waived.  Further, because taxpayer's bankruptcy issues were not, and could not, have been raised at his CDP hearing, they could not have been raised before the Tax Court, and cannot be raised here now.  And at any rate, taxpayer's trust fund recovery penalties were not dischargeable in bankruptcy, and the IRS may seek to collect them post-bankruptcy.  In all events, these bankruptcy arguments do not undermine the grant of summary judgment in this case.

## ARGUMENT

### I.    The Tax Court correctly granted summary judgment to the Commissioner, sustaining the liens and proposed levy against taxpayer

**Statement of the standard or scope of review**

This Court exercises plenary review over the Tax Court's grant of summary judgment, and the summary judgment standard in Tax Court Rule 121 is identical to that contained in Federal Rule of Civil Procedure 56. *Duquesne Light Holdings, Inc. & Subs. v. Commissioner*,

861 F.3d 396, 403 (3d Cir. 2017).  The Tax Court's interpretation and application of its own rules are reviewed for abuse of discretion.  *Moretti v. Commissioner*, 77 F.3d 637, 642 (2d Cir. 1996).

When liability is not at issue, this Court reviews the IRS Office of Appeals' determination in a CDP proceeding for abuse of discretion. *See Kanofsky*, 618 F. App'x at 50.  The Office of Appeals' rejection of a taxpayer's collection alternative will only be disturbed by a court "if it represents 'a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS.'" *Murphy v. Commissioner*, 469 F.3d 27, 32 (1st Cir. 2006) (quoting *Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005)). "Judicial review of such decisions is deferential*." Schwartz v. Commissioner*, 348 F. App'x 806, 808 (3d Cir. 2009) (citing *Orum v. Commissioner*, 412 F.3d 819, 820 (7th Cir. 2005).)

This Court will "set aside" the Office of Appeals' CDP determinations only if they are "unreasonable in light of the record compiled before the agency." *Est. of Lee v. Commissioner*, No. 21-2921, 2022 WL 3594523, at *1 n.1 (3d Cir. Aug. 23, 2022) (citing *Dalton v. Commissioner*, 682 F.3d 149, 155 (1st Cir. 2012)).  The court is not to "conduct an independent review of what would be an acceptable offer in

compromise." *Schwartz*, 348 F. App'x at 808.  Instead, the court must

"determine whether the Appeals officer's decision to reject the offer in

compromise actually submitted by the taxpayer was arbitrary,

capricious, or without sound basis in fact or law." *Id*.

### A.    The Tax Court correctly determined that the Appeals officer did not abuse his discretion in sustaining the liens and proposed levy

The Tax Court reviewed Appeals officer McCarrick's decision

sustaining the collection activity against the taxpayer and determined

the Appeals officer complied with all statutory requirements for

conducting a CDP hearing under Section 6330(c).  (AA 012.)  The

Appeals officer reviewed taxpayer's significant tax liabilities as laid out

in his tax account transcripts (AA 57-88), and confirmed that all legal

and procedural requirements pursuant to Section 6330 were met—a

requirement the court noted could have been met by relying on the

account transcripts.  (AA 012, AA 091-095.)  McCarrick also held an in-

person meeting with the taxpayer to discuss collection alternatives, and

although McCarrick communicated that he would sustain the liens (AA

010, AA 106), he nevertheless gave taxpayer an opportunity to provide

additional financial information so that taxpayer could try to

demonstrate that he had insufficient assets to support a levy. (AA 106.)[8]

McCarrick never received the required information, and the Tax Court

properly determined that McCarrick was within his discretion in

denying a collection alternative. (AA 012.)

As an initial matter, taxpayer does not appear to challenge

Appeals officer McCarrick's decision to sustain the liens on appeal, and

that issue is therefore waived.  McCarrick told taxpayer that the liens

would be sustained with or without the supplemental financial

information, "as the government does need to protect the government's

interest in assets." (AA 106.)  Taxpayer's claims of abuse of discretion

are aimed solely at McCarrick's failure to review additional information

that taxpayer asserts would have entitled him to "currently not

collectible" status.  (AA 010, 012.)  That would affect only the levy.  (Br.

at 26-27, AA 010, AA 012, AA 029-30.)  *See* I.R.C. § 6343(e) (authorizing

release of a levy where the "tax is not collectible"); I.R.M. 5.16.1.1.1(1)-

---

[8] It is within the Appeals officer's discretion to conduct a CDP hearing
solely by reviewing the documents in the case file, without any further
communication with the taxpayer. *Hartmann v. Commissioner,* 785 F.
App'x 906, 910 (3d Cir. 2019); Treas. Reg. §§ 301.6320-1(d)(2), Q&A
(D6), 301.6330-1(d)(2), Q&A (D6).

(2) (explaining that, in determining whether tax liabilities are not

collectible, "[t]he IRS balances the potential for collection against the

costs and its ability to collect," keeping in mind "an awareness that the

IRS also is charged with fair and equitable enforcement of tax laws").

Taxpayer therefore does not challenge McCarrick's determination

regarding the liens.

In all events, taxpayer's assertions are contrary to law and

unsupported by the record.  Appeals officer McCarrick did not abuse his

discretion by failing to consider financial information the taxpayer did

not provide to him, nor did he abuse his discretion by failing to consider

purported payments made to the IRS in bankruptcy years after the

CDP review took place.

> **1.    The Appeals officer did not abuse his discretion
> in rejecting a collection alternative when
> taxpayer failed to provide necessary financial
> information**

Taxpayer argues that the Appeals officer failed to evaluate

financial information that would have entitled taxpayer to a "currently

not collectible" determination, temporarily suspending collection.  (Br.

at 27.)  Taxpayer asserts, without attribution to the record: "the IRS

represented that it would consider the tax deficiency uncollectible so

long as Mr. Portnoy submitted further documentation." (Br. at 26.) The law is clear that an Appeals officer does not abuse his or her discretion in denying a collection alternative where the taxpayer has not submitted the necessary financial information. *See Hartmann*, 638 F.3d at 250; *Hartmann*, 667 F. App'x at 375; *see also Olsen*, 414 F.3d at 152-154 (no abuse of discretion in rejecting an offer in compromise where taxpayer failed to provide financial information during the administrative hearing); Treas. Reg. § 301.6330-1(e)(1) ("Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.").

Indeed, if there are grounds "on which the Appeals Officer could have validly rejected" a proposed collection alternative, a reviewing court will not examine the "tax enforcement details" concerning the rejection absent "clear taxpayer abuse and unfairness by the IRS." *See Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 631 (6th Cir. 2005); *see also Murphy*, 469 F.3d at 32; *Orum v. Commissioner*, 412 F.3d 819, 820-21 (7th Cir. 2005). Here, there was no showing of any abuse or unfairness. Appeals officer McCarrick told

15256041.1

-24-

taxpayer that he needed to provide account statements to support his claim that his tax liabilities were not collectible.  This request accords well with the law stating that "in order to be entitled to have his account placed in [currently not collectible] status the taxpayer must demonstrate that, on the basis of his assets, equity, income, and expenses, he has no apparent ability to make payments on the outstanding tax liability." *Margolis-Sellers v. Commissioner*, T.C. Memo. 2019-165, 2019 WL 6904110, at *14.  Thus, the Tax Court has held that a taxpayer was properly denied "currently not collectible" status where the Appeals officer "was unable to accurately ascertain petitioner's financial circumstances" when taxpayer failed to provide some, but not all, of the requested financial statements.  *Wright v. Commissioner*, T.C. Memo. 2012-24, 2012 WL 204181, at *3 (taxpayer properly denied currently-not-collectible status because the taxpayer did not provide that required documentation.[9])  *Cf. Kindred v. Commissioner*, 454 F.3d 688, 696–97 (7th Cir. 2006) (finding no abuse of

---

[9] Taxpayer's claim that he could have established that his tax liabilities were currently not collectible is dubious based on his own brief on appeal.  (*See* Br. at 12-13 (reciting substantial amounts procured by selling properties); *id*. at 33 (asserting subsequent payment of $310,265.51).)

discretion where taxpayers failed to submit an offer-in-compromise and otherwise failed to respond to other inquiries from the appeals officer).

Although taxpayer "avers" he mailed the necessary financial information (AA029), taxpayer provided no evidence that he did, in fact, mail the information, and the record contains no evidence that Appeals officer McCarrick ever saw it. This left the taxpayer's financial condition in doubt. (AA 044.) McCarrick did not abuse his discretion in sustaining the levy (as well as the lien) in light of taxpayer's insufficient provision of financial information.

Taxpayer asserted in his petition that he was aware mail sent to the IRS did not always reach its destination stating, "[w]ith prior mailings to the Philadelphia Office, such information was not received by them and had to be resent." (AA 030.) Yet taxpayer did nothing to ensure that the necessary financial items were delivered. Although taxpayer complains the IRS should have doggedly pursued him to obtain the missing information (Br. at 26-27), taxpayer bears the burden of establishing an abuse of discretion, and the Appeals officer acted well within his discretion, after waiting nearly four months, to sustain the levy when taxpayer ignored the request to provide

-26-

information.  *See, e.g., Kuretski v. Commissioner*, T.C. Memo. 2012-262,

2012 WL 3964770, at *4 (holding that the Office of Appeals is not

required to wait any specific amount of time after a CDP hearing to

issue its notice of determination), *aff'd*, 755 F.3d 929 (D.C. Cir. 2014).

Contrary to taxpayer's claim, taxpayer was never promised a

collection alternative even if he had provided the additional financials.

Rather, the record shows that McCarrick stated that he might

"recommend reporting the case as [currently not collectible] at this time

(pending the additional verification information to be received)" (AA

106.).  At most, the case would be considered currently non-collectible,

"if still appropriate at that time."  *Id*.  Thus, even if petitioner

submitted the required documents, he was not guaranteed that the

Appeals officer would conclude that a "currently not collectible"

recommendation was appropriate.  Even if that recommendation was

made, it would only affect current collectability.  The decision to

postpone a levy as non-collectible would not affect the amount of tax

that taxpayer owed.

To the extent taxpayer can be viewed as challenging the denial of

an offer-in-compromise as a collection alternative, taxpayer was told he

was "not the best candidate" for such relief because there were concerns that he had "equity in assets." (AA 100; AA 044.) But the decision to accept or reject an offer-in-compromise "is left to the discretion of the Secretary." Treas. Reg. § 301.7122–1(c)(1) (26 C.F.R.). When the taxpayer did not provide required information, the IRS was "unable to substantiate and verify" his purported inability to pay. (AA099, AA 100, AA 044.) The settlement officer did not abuse his discretion in sustaining the collection, and the Tax Court did not err in upholding it.

## 2. The Tax Court did not err in upholding the 2013 notice of determination despite later tax payments allegedly made to the IRS in bankruptcy

Taxpayer argues the Tax Court committed reversible error by not crediting payments made to the IRS on taxpayer's behalf as a result of the bankruptcy. (Br. at 31-33.) Taxpayer contends it was an abuse of discretion for Appeals officer McCarrick—in 2013—to "sustain a collection action" in the amount of the $1.2 million assessments, when at some point years in the future the IRS would collect some $310,000 from taxpayer's bankruptcy. This argument fails for three reasons. First, it cannot be an abuse of discretion for McCarrick to fail to consider events that had not happened. This Court will set aside the

Office of Appeals' CDP determinations only if they are "unreasonable in light of the record compiled before the agency." *Est. of Lee*, 2022 WL 3594523 at *1 n.1 (citing *Dalton*, 682 F.3d at 155). Given that such purported payments were not before McCarrick, his decision to sustaincollection could not be "arbitrary, capricious, or without sound basis in fact of [sic] law" as taxpayer contends.[10] (Br. at 32.)

Second, none of the payments allegedly made by the taxpayer are in the record. Taxpayer argues the Tax Court erred by failing to consider uncited, unsourced, and unsubmitted documents, and that the Court should have credited information "based on the publicly available filings in the bankruptcy court proceedings." (Br at. 33.) Notably, taxpayer cites nothing indicating that the Tax Court was required to scour the records of his bankruptcy case—a bankruptcy case that he

---

[10] To be sure, if the IRS had either abated the remaining assessments or if the IRS conceded that taxpayer had fully paid the liabilities, both the proposed collection actions and the Tax Court case would be moot. *See, e.g.*, *Brown v. Commissioner*, 58 F.4th 1064, 1067 (9th Cir. 2023); *McLane v. Commissioner*, 24 F.4th 316, 318 (4th Cir.), *cert. denied*, 143 S. Ct. 408 (2022); *Willson v. Commissioner*, 805 F.3d 316, 321 (D.C. Cir. 2015); *Greene-Thapedi v. Commissioner*, 126 T.C. 1, 13 (2006). Here, however, taxpayer alleges *partial* payment of the liabilities, and there has been no abatement of any remaining tax liabilities.

routinely failed to update the Tax Court on—to identify payments that might apply to the particular tax liabilities at issue in this CDP case. *Cf. Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 996-97 (5th Cir. 2019) (trial court is not required to search the record for evidence countering summary judgment motion). The Tax Court reviews the Appeals officer's decision to reject a collection alternative based on what the taxpayer "actually submitted." *See*, *Schwartz*, 348 F. App'x at 808. Nearly all documents cited by taxpayer regarding the bankruptcy (*see* AA-228-581) are not in the record of this case, nor were they before the Office of Appeals at the CDP hearing.

Finally, taxpayer argues that the bankruptcy payments are a challenge to the amount of the tax *liabilities*, rather than to the collection due process (Br. at 19, 32.) Taxpayer could not challenge liability in his CDP proceeding because he had previously challenged liability. (*See supra* at 7.) Thus, the Tax Court was correct to uphold the collection actions based on the information before the Office of Appeals during the CDP action. To the extent that taxpayer did, in fact, make payments that reduced his ultimate liabilities, that simply reduces potential future collections—it does not vitiate the correctness

of the Office of Appeals' determination that collection by lien and levy
was appropriate.

## B.   The Tax Court did not err in entering summary judgment without a response from the taxpayer

Taxpayer asserts that he did not receive a proper opportunity to
respond to summary judgment.  (Br. at 19, 28-31.)  In making that
argument, however, taxpayer ignores his own failure to follow the Tax
Court's rules and orders.

The relevant facts are clear and undisputed.  On August 20, 2014,
before the Tax Court proceeding was stayed due to taxpayer's
bankruptcy, the Tax Court ordered taxpayer to respond to the
Commissioner's summary judgment motion by September 22, 2014.
(SA1-3.)  At that time, the Tax Court warned taxpayer that failure to
respond could result in summary judgment being entered against him
under Tax Court Rule 121(d).  (SA1-3.)  After learning of taxpayer's
bankruptcy petition (initially from the Commissioner), the Tax Court
stayed the case, but requested status updates from the parties.  (AA
014-15.)  After signing on to one status update filed on February 25,
2015 (SA5), taxpayer then disappeared:  filing no additional status
updates and failing to notify the Tax Court of changes of address.  The

Tax Court sought to maintain a correct address for taxpayer, relying on

mail-forwarding notices, and repeatedly warned taxpayer that he was

required to notify the court of changes-of-address, pursuant to Tax

Court Rule 21(b)(4).  (AA 017, 019.)  Taxpayer further failed to notify

the Tax Court that his bankruptcy had closed on April 6, 2021; instead,

the Commissioner advised the court of that fact on May 23, 2022. (AA

138-41.)  On May 25, 2022, the Tax Court lifted the stay and ordered

taxpayer to file his summary judgment response by June 22, 2022.  (AA

021.)  But taxpayer never responded.  On January 3, 2023—almost

twenty-one months after taxpayer's bankruptcy closes and over seven

months after taxpayer was ordered to respond to the Commissioner's

motion—the Tax Court granted summary judgment to the

Commissioner.

As this history shows, taxpayer repeatedly disregarded both the

Tax Court's rules and specific court orders to keep the court updated on

his bankruptcy and to notify the court of any change of address.

Taxpayer argues, without citation to the record, and directly contrary to

what *is* in the record, that the Commissioner "knew or should have

known of Mr. Portnoy's changing address and should have contacted

Mr. Portnoy at his new address regarding the submission of a joint status report **and** should have ensured that Mr. Portnoy received the Tax Court's order lifting the stay and setting a deadline for a response to the Commissioner's MSJ." (Br. at 30 (emphasis in original).)

Taxpayer admits that Tax Court Rule 21(b)(4) required him to keep the court appraised of his current address. (Br. at 29.) So did multiple court orders. The court explicitly warned on August 20, 2014, the taxpayer that the court might grant summary judgment without taxpayer's response if taxpayer failed to file one. (SA1-3.) After that warning, taxpayer continued to personally sign and file papers with the Tax Court after that date. (*See*, *supra* at 12 and (SA5) (filed February 25, 2015).)

Taxpayer argues that he should be excused from repeatedly failing to "promptly notify" the court with his new addresses because he was "pro se." He believes this entitles him to a "liberal construction" of the Tax Court's rules. (Br. at 30.) But the court's direct orders and the Tax Court's rules are clear. There is no liberal construction of "promptly notify" that includes "never notify."

Taxpayer improperly suggests to this Court that the

Commissioner purposefully avoided contacting the missing taxpayer,

claiming that "the IRS ignored the Court's order to submit a ***joint***

report and submitted a unilateral report." (Br. at 30 (emphasis in the

original).) But that is not what the orders say. Subsequent to the

parties' initial joint report, the Tax Court explicitly, and repeatedly,

required "*the parties*" to file "*further reports*." (SA10-15 (emphasis

supplied).) The Commissioner complied. Taxpayer did not. Further, as

the Commissioner informed the Tax Court, his counsel tried to get into

contact with taxpayer before filing the Commissioner's second status

report, but could not do so. (SA8.)

Finally, taxpayer's reliance on *Gregory v. Commissioner*, 839 F.

App'x 745 (3d Cir. 2020), in which a taxpayer used the wrong form to

provide "clear and concise notice" to the IRS for the purpose of changing

his address, is misplaced. (Br. at 29-30.) In that case, the IRS sent the

taxpayer a statutory notice of deficiency to an old address, because the

taxpayer did not follow appropriate procedures for providing the

required change of address. Nonetheless, this Court concluded that

"actual notice to the IRS agent combined with an updated address on

two forms is sufficient notice," even though the taxpayer did not follow

the proper rules for establishing a new address.  This Court vacated the

Tax Court's ruling upholding the notice of deficiency "because of the

unique facts" of that case. *Gregory*, 839 F. App'x at 746, 748.)

The differences between *Gregory* and this case are obvious.  First,

it is undisputed here that the IRS sent all statutory notices to

taxpayer's last known address, and taxpayer responded to those notices

by requesting a CDP hearing.  (AA 118-20.)[11]  But more importantly,

the Tax Court granted summary judgment on the merits—and not a

default judgment[12]—because the Commissioner was entitled to it as a

matter of law, and because taxpayer refused to tell the court where he

was.  Taxpayer's implication that the IRS "has a duty to track him

down and assure that he is notified" of Tax Court proceedings "is

without foundation in rule or law."  *Smith v. Commissioner*, T.C. Memo.

---

[11] Taxpayer's purported Form 8822 change of address form (AA 581, which is not in the record) would be relevant to where the IRS sends taxpayer's tax returns, but it is irrelevant to where the Tax Court sent him papers.  This is particularly true because, as shown above in the statement of facts, taxpayer had multiple addresses during the litigation.

[12] In *Smith v. Commissioner*, 926 F.2d 1470, 1480 (6th Cir. 1991) the Sixth Circuit affirmed a Tax Court entry of a default judgment against a taxpayer who similarly ignored Rule 21(b)(4).

-35-

1989-171, *aff'd*, 926 F.2d 1470 (6th Cir. 1991) (citing *Basic Bible Church of Am. v. Commissioner*, 86 T.C. 110, 114- 115 (1986).)  In affirming the Tax Court's decision in *Smith*, the Sixth Circuit wrote: "[w]e agree with the tax court's conclusion that petitioner's failure to keep the Court advised of his address over a seven year period clearly violated its Rules and displayed 'a reckless disregard for the petition he filed in the instant case and for the judicial proceedings he instituted by filing his petition.'" *Id*. (internal citation to the Tax Court opinion omitted).  That sentiment applies here.

As demonstrated in detail above (*see supra,* pp. 11-15), the Tax Court made numerous attempts to serve papers on the taxpayer, including the order terminating the stay and setting forth the new summary judgment response date.  That order was sent to taxpayer's 18th Street address in Philadelphia, which continues to be taxpayer's address of record, despite taxpayer now claiming to live in the oceanfront community of Surfside, Florida.  (Br. at 12; *see supra,* at 15.)[13]

---

[13] Taxpayer has never indicated how he learned that the Tax Court granted summary judgment against him, given that that notice

(continued…)

Ultimately, taxpayer knew that he had a Tax Court petition

pending, as he was the party who filed it.  Taxpayer does not deny that

he was aware that the Commissioner had filed a motion for summary

judgment and that the Tax Court had ordered him to respond to that

motion prior to the case being stayed due to taxpayer's bankruptcy

proceeding.[14]  Nor can he reasonably claim that he was unaware that

the Tax Court, in staying the proceeding, had requested status updates,

as he participated in the first status update.  (SA5.)  Yet years went by

without taxpayer filing any status updates with the court or notifying

_____

was sent to the same 18th Street address as the court's order that he
respond to the summary judgment.

[14] Taxpayer briefly suggests that the Commissioner's motion
should have been stricken because it was filed in violation of the
bankruptcy stay. (Br. at 11 n.2.)  Notably, taxpayer never moved in the
Tax Court to strike the motion.  (AA 022-028.)  In all events, summary
judgment proceedings were stayed upon the Commissioner alerting the
Tax Court of the bankruptcy case and were not reactivated until after
the Commissioner notified the Tax Court that the bankruptcy case was
closed.  (AA 014-15; AA 138-41.))  *See* 11 U.S.C. § 362(c)(2)(A)
(automatic stay ends when the bankruptcy case is closed).  And when
the summary judgment motion was reactivated, the Tax Court gave
taxpayer ample time to respond.  (AA 021.)  Even if the Tax Court
should have stricken the motion and ordered it re-filed, it would have
led to the same result:  an order that taxpayer respond by a date
certain.  Thus, any error would be harmless and would not justify a
reversal of the Tax Court's order.  *See* 28 U.S.C. § 2111; *Leyse v. Bank of
Am. Nat. Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015).

-37-

the court of his changes of address.  More than a year passed after the

closing of taxpayer's bankruptcy case before the Tax Court reopened its

proceeding and ordered taxpayer to respond to summary judgment.

Another seven months passed before the Tax Court granted summary

judgment.  Taxpayer could have—and should have—taken steps to be

aware of what was happening in his Tax Court proceeding.  His failure

to do so does not somehow create legal error.

The Tax Court properly granted summary judgment without

taxpayer's response.

## II.    This Court is without jurisdiction to hear taxpayer's bankruptcy issues, which lack merit in any event

The bulk of taxpayer's brief argues that the IRS is equitably or

judicially estopped from collecting his taxes at all because the IRS could

have collected those funds in the bankruptcy but (allegedly) chose not to

do so.  (Br. at 21-28.)  As an initial matter, because taxpayer did not

make that argument in the Tax Court, he has waived it.  *See*, *e.g.*, *Bagot*

*v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005).[15]

---

[15] *Bagot*, 398 F.3d at 256, notes two discretionary exceptions,
neither of which was raised by taxpayer in his opening brief.   In all
(continued…)

15256041.1

Moreover, the Tax Court proceeding solely addressed whether the Office of Appeals abused its discretion in sustaining the lien and levy collection actions. Nothing in the bankruptcy proceeding—which happened years later—was a part of the CDP hearing at issue in this appeal. The Tax Court's review is limited to issues that were properly raised during the CDP hearing. *See Jeffers v. Commissioner*, 992 F.3d 649, 654 (7th Cir. 2021); *Est. of Duncan v. Commissioner*, 890 F.3d 192, 198 (5th Cir. 2018); *Our Country Home Enters., Inc. v. Commissioner*, 855 F.3d 773, 780 (7th Cir. 2017). And because the bankruptcy was not an issue before the Tax Court, this Court has no jurisdiction to consider it. *See Commissioner v. McCoy*, 484 U.S. 3, 6 (1987 ("[I]n reviewing a Tax Court decision, the duty of the court of appeals is to consider whether the Tax Court committed error. Plainly, the court of appeals lacks jurisdiction to decide an issue that was not the subject of the Tax Court proceeding or to grant relief that is beyond the powers of the Tax Court itself.") (internal citations omitted); *Tuka v. Commissioner*, 348 F.

---

events, neither exception applies here. The question of whether the IRS should have sought to force the bankruptcy court to pay its claim out of the bankruptcy estate is not one of public importance, and as explained below, this case presents no miscarriage of justice but, instead, is a permissible attempt to collect unpaid, nondischargeable tax debts.

App'x 819, 820 (3d Cir. 2009) (this Court's review is limited to the

propriety of the Tax Court's decision "and we may not consider issues

that were not part of the Tax Court proceeding or grant relief that

would be beyond the power of the Tax Court itself").

Even if taxpayer's bankruptcy were relevant, the IRS was, and is,

under no requirement to satisfy taxpayer's Section 6672 penalty

assessments from the proceeds of the sale of properties by the trustee.

That erodes the entire premise of taxpayer's judicial and equitable

estoppel claims.  (Br. at 22-28.)  Section 6672 penalties are not

dischargeable in bankruptcy, and remain with taxpayer until paid.

*United States v. Sotelo*, 436 U.S. 268, 277, 281 (1978); 11 U.S.C.

§ 523(a)(1).[16]  *See also Matter of Ribs-R-Us, Inc.*, 828 F.2d 199, 201 (3d

Cir. 1987) ("[P]ersonal liability under section 6672 is not dischargeable

and survives the bankruptcy of the responsible persons.") (internal

citations omitted).  Indeed, even if the IRS had failed to make *any* claim

---

[16] 11 U.S.C. § 523(a)(1) renders nondischargeable any tax liability
which is "of the kind and for the periods specified in section 507(a)(3) or
507(a)(8) of this title, whether or not a claim for such tax was filed or
allowed."  Taxpayer's Section 6672 liabilities fall within 11 U.S.C.
§ 507(a)(8)(C) because they constitute "tax[es] required to be collected or
withheld and for which the debtor is liable in whatever capacity."

-40-

for the Section 6672 penalties in taxpayer's bankruptcy, his tax liabilities would still be nondischargeable. *See* 11 U.S.C. § 523(a)(1) (covered tax liabilities are nondischargeable "whether or not a claim for such tax was filed or allowed"). Further, under the express terms of 11 U.S.C. § 523(a)(1), "the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start." *In re DePaolo*, 45 F.3d 373, 376 (10th Cir. 1995).

Taxpayer's estoppel claims do not alter the nondischargeability of taxpayer's tax liabilities, nor the Commissioner's ability to seek to collect those liabilities post-bankruptcy. As an initial matter, equitable estoppel generally does not lie against the Government, *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419-23 (1990), and taxpayer provides neither reasoning nor legal support for his claim that equitable estoppel should apply against the Commissioner here.

Further, contrary to taxpayer's assertions, there is no evidence in the record or even in the non-record items included in his appendix that establishes that the Government made contrary representations in his

bankruptcy about the nondischargeability or amount of his tax liabilities. The most that taxpayer has asserted is that the Government did not press to ensure that its nondischargeable tax claims were paid out of the bankruptcy estate. But that does not prevent the Government from seeking to collect the unpaid nondischargeable tax claims after taxpayer's bankruptcy case closed. *DePaolo*, 45 F.3d at 375 ("The party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy."). Thus, in *In re Minor*, 2022 WL 1135391, *1-2 (9th Cir. 2022), the Ninth Circuit rejected the claim that an IRS stipulation limiting its priority claim created either claim or issue preclusion preventing the IRS from seeking to collect additional nondischargeable tax liabilities after bankruptcy. Here, taxpayer makes vague complaints about the IRS's alleged failure to "enforce its rights" in the bankruptcy, but has not shown that the IRS ever ceded its right to collect unpaid, nondischargeable tax debts from taxpayer. *See also Miller v. United States*, 363 F.3d 999, 1006 (9th Cir. 2004) (noting the "interpretive rule that statutory rights can be waived only by an explicit statement").

-42-

Although taxpayer wishes it so, Congress did not entitle him to a "fresh start" with regard to these non-dischargeable taxes. (Br. at 19, 25; *supra* at 7 n.4.) This Court should reject taxpayer's attempts to insulate his nondischargeable tax liabilities from collection.

## CONCLUSION

The decision of the Tax Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Carl D. Wasserman

| | |
|---|---|
| JENNIFER M. RUBIN | (202) 307-0524 |
| CARL D. WASSERMAN | (202) 307-6587 |
| *D.C. Bar No. 459058* | |
| *Attorneys* | |
| *Tax Division* | |
| *Department of Justice* | |
| *Post Office Box 502* | |
| *Washington, D.C. 20044* | |

JANUARY 12, 2024

-43-

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rule 28.3(d), it is hereby certified that, because the attorneys on this brief represent the Federal Government, the requirement that at least one attorney must be a member of the Bar of this Court is waived.

/s/ Carl D. Wasserman
CARL D. WASSERMAN
*Attorney for the Appellee*

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]    this document contains <u>8,457</u> words, **or**

[ ]    this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]    this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]    this brief has been prepared in a monospaced typeface using _____ with _____.

3.  The undersigned hereby further certifies that the foregoing brief filed electronically with the Court is in PDF searchable format, that the text of the PDF copy is identical to the text of the paper copy, that the PDF version has been electronically scanned for viruses with Microsoft Windows Defender (updated daily), and that, according to the program, no viruses were detected.

(s)   <u>/s/ Carl D. Wasserman</u>

Attorney for  <u>Appellee</u>

Dated: <u>     January 12, 2024</u>